Michael Avramidis, Esq. SBN 277314
Pacific Grove Law Group
207 16th Street, 303 North
Pacific Grove, CA 93950
Tele: 831-204-8223
Email: pglawgroup@gmail.com
Attorney for Cypress Holdings Group, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **CYPRESS HOLDINGS GROUP, INC., A Wyoming Corporation,**<br>                Plaintiff,<br><br>vs.<br><br>**Invotek Electronics, Inc., A Canada Corporation,**<br>**Mara Technologies, Inc., An entity of unknown form, and**<br><br>**Does 1 through 50 Inclusive,**<br>                Defendants. | Case No.: 5:20-CV-3690<br><br> COMPLAINT FOR:<br>**1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>**4. MISREPRESENTATION.**<br>(28 U.S.C.§1332; Diversity of Citizenship) |

   1. Plaintiff, CYPRESS HOLDINGS GROUP, INC. (hereinafter "Plaintiff") for its Complaint against Defendants Invotek Electronics, Inc. (hereinafter "Invotek"), Mara Technologies, Inc. (hereinafter "Mara")and Does 1 through 50 (hereinafter collectively referred to as "Defendants"), allege as follows based on its personal knowledge as for itself, and on information and belief as to the acts of others:

**THE PARTIES**

   2. Plaintiff is and was at all relevant times a corporation, duly organized and existing under Wyoming Law with its principal place of business at 2968 CRESCENT ROAD, PEBBLE BEACH, COUNTY OF MONTEREY, STATE OF CALIFORNIA 93953.

3. Invotek is a Canada corporation, with its principal place of business at 5680 14th Avenue, Markham, ON Canada L3S 3K8.

4. Mara is an entity of unknown form, with its principal place of business at 5680 14th Avenue, Markham, ON Canada L3S 3K8. Plaintiff is informed and believes that Mara is a subsidiary of Invotek.

5. At all material times, each of the Defendants, including Does 1 through 50, was the agent, servant, employee, partner, joint venture, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the other.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332 (a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States Cypress having its principal place of business in California and Defendants being incorporated and doing business in Canada.

7. Venue in the Norther District of California is proper pursuant to 28 U.S.C. §1391(c)(3) because Defendants are not residents in the United States and may be sued in any judicial district.

**FACTUAL ALLIGATIONS**

8. Cypress, doing business as Pathogenx, Inc. in California, is in the business of medical device development and sales.

9. On or about July 2019 Cypress contacted Defendants to design and manufacture Cypress' state-of-the-art PX2 medical waste disposal unit.

COMPLAINT FOR:
1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 2

10. The Parties discussed Cypress' intent to have a finished product ready for market by May 2020. Due to the nature of medical device regulations Cypress informed Defendants that Cypress would need 2-3 working prototypes (hereinafter "Prototypes") by December to conduct clinical trial testing for FDA and EPA approval.

11. Invotek Vice President of Business Development Dave Patterson (hereinafter "Patterson") informed Cypress on or about August 1, 2019 that Defendants would have the working Prototypes to Cypress for testing by December 2019.

12. On or about August 30, 2019 Cypress entered into a Manufacturing Agreement with Mara whereby Mare would manufacture and supply Cypress with the PX2 unit.

13. On or about September 5, 2019 Cypress entered into a Design Services Agreement with Invotek whereby Invotek would design the PX2 in a professional and workmanlike manner and in accordance with all reasonable professional standards for such service.

14. Cypress executives met with Defendants in Toronto on or about September 24, 2019 to discuss the December 2019 timeframe for the testing units, UL certification by February 2019, and late February to March of 2019 for full production of the PX2.

15. Pricing for the manufacturing of the PX2 was uncertain at the time Cypress and Mara entered into the Manufacturing agreement. Cypress was assured by Mara on or about November 11, 2019 that Mara would have a Manufacturing Cost Quote by November 15, 2019. To date Cypress has not received a price quote for Manufacturing of the unit.

16. On or about November 21, 2019 Cypress contacted Patterson to schedule a demonstration of working Prototypes at which time Patterson

COMPLAINT FOR:
1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 3

informed Cypress that the units would not be completed until Mid-January 2020.

17. On or about December 16, 2019 Patterson contacted Cypress stating that the Prototype would be again delayed until March or April of 2020.

18. On or about December 26, 2019 Patterson send Cypress a revised timeline for the production of the PX2 with the following changes:
   a. Production Quotes December 27, 2020;
   b. Pilot Build (use for certification and early adopter) May 1, 2020;
   c. Electrical Certification Testing May 15, 2020;
   d. Validation and Certification June 12, 2020;
   e. PX2 Production Launch June 12, 2020; and
   f. Start of Regular Production June 12, 2020.

19. The Parties again meet on or about January 2, 2020 to confirm the timeline supplied on or about December 26, 2019.

20. On or about March 2, 2020 Invotek informed Cypress that the PX2 unit did not meet UL Certification requirements. To date Invotek has failed to release the UL certification agencies letter of non-compliance leaving Cypress in the dark as it relates to the scope of the failure and making it impossible for Cypress to determine the scope of work needed to correct Invotek's mistakes.

21. On or about March 12, 2020 Patterson sent Cypress a summary of industry certifications for similar medical devices outlining FDA and UL for medical devices sold in the US, Canada and abroad.

22. On or about March 15, 2020 Cypress filed Design and Utility Patents with the USPTO for the PX2 based on the design provided by Invotek under the Design Services Agreement.

23. On or about March 30, 2020 Chris Liu of Leojet Trading Int'l LLC (hereinafter "Liu") contacted Custom Fine Metals Ltd. (hereinafter "Custom"), a parts supplier for Mara, requesting a price quote for parts. The parts list Liu provided Custom was the exact parts list Mara had created for Cypress including the unique part numbers Mara had specifically generated for the PX2.

24. On or about (Date) Invotek CEO Paul LaCroix (hereinafter "LaCroix") contacted Cypress regarding Liu's attempt to obtain pricing information and insinuated that Liu was functioning as an agent of Cypress.

25. Counsel for Cypress sent Liu and Leojet a Cease and Desist letter on or about April 7, 2020 as it related to the parts list and use of Cypress' confidential information. Liu responded to the Cease and Desist by email on April 8, 2020 citing a misunderstanding as it related to Cypress' parts list and would immediately Cease and Desist from further use of the parts list.

26. Liu further explained that the parts list was supplied to Leojet from Foshan Nut Technology, which is a supplier of Mag Mara Technologies Limited (hereinafter "Mag Mara") a subsidiary of Invotek indicating an Eva Liu of Mag Mara as the individual who supplied the list.

27. On or about April 14, 2020 counsel for Cypress contact LaCroix to discuss the dissemination of information at which time counsel was informed that an unidentified Invotek General Manager released the information.

28. On or about May 7, 2020 Cypress requested the following from Invotek pursuant to the Design Services Contract which outlines Cypress' ownership of the following:

    a. Entire CAD package in native format.  Should include assembly, part, and drawing files. If they use solidworks, as them to utilize the 'pack and go' feature, checking all the boxes for inclusion.

COMPLAINT FOR:
1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 5

      b. Indented Bill of Materials that includes manufacturer, quantity, and part number with revisions level of all parts. If fabricated part like machined, sheet metal, or cable, BOM should include a drawing number that corresponds to a detail print supplied in the CAD package. If Bin stock parts, part description must include details.

      c. Electrical schematics

      d. Cable drawings

      e. PCB design package including all design files. Must include Bill of Materials for all PCBs

      f. Software source code

      g. Firmware source code

      h. Necessary setup files like parameter or configuration files

      i. Mold tooling transfer details

      j. Work, test, or setup instructions that have been created, even if incomplete

      k. Assembly and test tooling and fixtures if they exist

      l. Documentation from agency certification activities to date. Example: documents submitted and received from TUV

      m. Documentation supporting RoHS compliance, even if incomplete

      n. Functional test results from prototype testing

29. On or about May 7, 2020 LaCroix responded that Invotek received the request for information and that nothing will be sent to Cypress from this point forward without the direct authorization of either himself or Invotek Chief Operating Officer Peter Schmied (hereinafter "Schmied"). To date Cypress Has not received those items specified above that they are intitled to pursuant to the Design Agreement.

COMPLAINT FOR:
1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 6

30. On or about May 12, 2020 Nelson Labs in New Jersey received a Prototype unit and discovered that the unit would shut down prematurely. Cypress contacted Invotek regarding the shutdown of the unit and was told that Invotek expected the unit to react in that fashion and had a software update prepared further delaying testing. A second Prototype was to be sent to Nelson Labs in Salt Lake City; however, delivery was delayed due to Invotek providing Cypress with incorrect tracking information.

31. Invotek has made multiple attempts to renegotiate the terms of the Manufacturing Agreement though issuance of Memorandums of Understanding which further the delays to production of the PX2 and shift costs to Cypress for Invotek's failure to meet UL standards.

32. Due to Invotek's representations Cypress has and continues to fully staff its offices in anticipation of the ability to execute sales of the PX2. Cypress relied on Invotek's representations and hired staff under the assumption that the PX2 would be ready for launch under the initial production schedule. Between August 2019 to May 2020 Cypress has expended over $500,000.00 in business expenses to maintain a staff and offices to execute the sales of products Invotek has yet to produce. These expenses do not include the $540,000.00 paid to Invotek to Design the PX2. Invotek is now holding Cypress' Intellectual Property hostage in order to force Cypress into continuing with them as the manufacturer of the PX2.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(Against all Defendants)**

33. Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

34. Defendants agreed to be bound by the Design Agreement and Manufacturing Agreement.

35. Cypress has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of both agreements.

36. Defendants have breached the Design Agreement by continually failing to produce those documents outlined above that are now the property of Cypress, and Defendants did not produce a unit in a professional and workmanlike manner in accordance with all reasonable professional standards, which is evident from the PX2's inability to meet UL standards and Software failure.

37. Defendants have and continue to breach the Manufacturing Agreement by continual failure to meet deadlines, and numerous attempts to shift costs of their (Invotek's) design flaws to Cypress.

38. Defendants have breached both agreements by allowing confidential information, i.e. the parts list, to be leaked to Leojet.

39. As a result of Defendants' breach of the Design and Manufacturing Agreements, Defendants have caused damage to Cypress in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Breach of Implied-In-Fact Contract**

**(Against all Defendants)**

40. Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

41. Defendants agreed to be bound by the terms of the Manufacturing Agreement.

42. Defendants provided timelines and readiness schedules/manufacturing timeframes for the production of the PX2.

43. Cypress has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the agreement.

44. Defendants have and continue to fail to meet any and all deadlines set subsequent to the initial Manufacturing Agreement.

45. As a result of Defendants' breach of the Design and Manufacturing Agreements, Defendants have caused damage to Cypress in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### Breach of Good Faith and Fair Dealing

### (Against All Defendants)

46. Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

47. Defendants agreed to be bound by the Design Agreement.

48. Cypress has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the agreement.

49. Defendants Designed the PX2, although it is not in conformity with UL standard and has software issues, pursuant to the Design Agreement.

50. Defendants are now unfairly interfering with Cypress's right to receive the benefits of the contract by withholding the Design Intellectual Property, thereby holding Cypress hostage to the Manufacturing Agreement.

51. Cypress has been harmed by Defendants' conduct, in that, they cannot procure another Manufacture without having to completely redesign the PX2 due to Defendants unwillingness to release Cypress' Intellectual Property, in an amount to be proven at trial.

///

///

**FOURTH CAUSE OF ACTION**

**Misrepresentation**

**(Against All Defendants)**

52. Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

53. Defendants represented that they had the ability to produce and design the PX2 in a professional and workmanlike manner in accordance with all reasonable professional standards.

54. Defendants representation was not true, in that, the PX2 did not pass UL standards, the software caused the units to crash, and they have continually failed to meet production deadlines they themselves have set.

55. Defendants had no reasonable grounds for believing that they could produce the PX2 within the guidelines and parameters necessary for Medical Devices and/or meet the production schedule which they are now trying to extend further.

56. Defendants indended that Cypress rely on their representations as to their ability to produce the PX2.

57. Cypress did rely on Defendants representation by staffing and procuding facilities to store the PX2 units with the originally anticipated launch date.

58. Cypress has been harmed in an amount to be proven at trial.

59. Cypress' reliance on Defendants' representations is a substantial factor in causing its harm, but for, Defendants' representation Cypress would not have paid for the Design work, begun staffing, executed the Manufacturing Agreement and procured a storage/warehouse facility.

///

///

///

COMPLAINT FOR:
1. BREACH OF CONTRACT;2. BREACH OF IMPLIED-IN-FACT CONTRACT;3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 10

**PRAYER FOR RELIEF**

WHEREFORE, Cypress respectfully prays for the following:

A. For an Order directing Defendants to return Cypress' property, including, without limitation, Cypress' confidential, proprietary, Software and Support Materials, including, data, internal documents, updates, patches, fixes, and other computer code, and any and all of the documentation design schematics as set forth in this Complaint;

B. For damages of $1,400,000.00 or to be proven at trial;

C. For prejudgment interest;

D. For an accounting;

E. For an Order awarding Cypress its attorneys' fees and costs; and,

F. For an Order awarding Cypress such other and further relief as the Court deems just and proper.

**Pacific Grove Law Group**

DATED: 06/03/2020

Michael Avramrdis, Esq.
Attorney for Cypress Holdings Group Inc.

COMPLAINT FOR:
1. BREACH OF CONTRACT; 2. BREACH OF IMPLIED-IN-FACT CONTRACT; 3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND
4. MISREPRESENTATION. - 11